IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Bernard Nicholl, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 16 CV 50151 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Wexford Health Care Sources, Inc., *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

**REPORT & RECOMMENDATION**

Plaintiff Bernard Nicholl alleges that, while an inmate at Dixon Correctional Center, Defendants were deliberately indifferent to his chronic obstructive pulmonary disease ("COPD") and bone spurs. Defendants asserted the affirmative defense of failure to exhaust administrative remedies. On February 14, 2018, Magistrate Judge Johnston conducted an evidentiary hearing on this affirmative defense pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Thereafter, he entered a Report & Recommendation finding that Plaintiff had exhausted his administrative remedies with respect to his claim that Defendant Dominguez was deliberately indifferent in her treatment of Plaintiff's COPD but did not exhaust his administrative remedies as to any other claims against the individual defendants. Dkt. 103 at 1. As such, he recommended that the Plaintiff be prohibited from proceeding on his allegations concerning bone spurs but be allowed to proceed on his allegations about COPD as against Dr Dominquez only and dismissing all remaining individual defendants. *Id.* at 7. The case would continue as to Defendant Wexford Health Care Source, Inc.

Thereafter, Defendants sought and were granted leave to obtain Plaintiff's counseling records. Dkt. 106. After receiving those records, the Wexford Defendants timely objected to the

Report & Recommendation solely as it related to the finding that Plaintiff had exhausted his administrative remedies vis-à-vis Defendant Dominguez. Dkt. 115 at 2. Defendants based their objection on the newly obtained records, including Plaintiff's grievance tracking log which Defendants argued demonstrated that Plaintiff had not exhausted his administrative remedies with respect to the claim against Defendant Dominguez. *Id.* District Court Judge Kapala returned the matter back to the Magistrate Judge to issue a revised Report & Recommendation in light of this new evidence. Dkt. 121.

On May 20, 2019, the undersigned held another *Pavey* hearing limited to determining whether, considering this new evidence, Defendant Dominguez could prove by a preponderance of the evidence that Plaintiff had failed to exhaust his remedies against Defendant Dominguez. For the reasons that follow, the undersigned finds that Plaintiff failed to exhaust his administrative remedies with regard to his claim that Defendant Dominguez was deliberately indifferent to Plaintiff's COPD.

## BACKGROUND

In his Report & Recommendation following the first *Pavey* hearing, Judge Johnston found that Plaintiff exhausted his claim that Defendant Dominguez was deliberately indifferent to his COPD. Dkt. 103 at 1. Judge Johnston found that Plaintiff's grievance dated January 19, 2016 "fairly raise[d] the issue of the symptoms" of COPD. *Id.* at 5. Judge Johnston then turned to the issue of exhaustion of the January 19, 2016 grievance. Defendants had produced evidence showing that the Administrative Review Board ("ARB") did not receive Plaintiff's January 19, 2016 grievance. Because appeal to the ARB is required in order to exhaust administrative remedies, Defendants argued that this evidence satisfied their burden of proof that exhaustion had not occurred. *Id.* Judge Johnston pointed to Plaintiff's testimony that he never received a

2

response to the January 19, 2016 grievance from his grievance counselor or the Warden. *Id.* Judge Johnston reasoned that when Plaintiff did not receive a response, Plaintiff had no decision to appeal, and therefore his failure to appeal to the ARB was excused. *Id.* at 6 (citing *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016)). Judge Johnston concluded that Defendants did not meet their burden because they never identified evidence showing that either Plaintiff's counselor or the Warden responded to the January 19, 2016 grievance. *Id.* at 6.

At the May 20, 2019 *Pavey* hearing before this Court, Defendants called James Martens, a former grievance officer at Dixon Correctional Center, to testify concerning Plaintiff's grievance tracking log. He testified that the grievance tracking log is kept in the ordinary course of business at Dixon Correctional Center and is made contemporaneously with the receipt and response to a prisoner's grievance. For Plaintiff's January 19, 2016 grievance, the grievance tracking log reflects that the grievance was sent to the grievance counselor on January 22, 2016 and then sent back to Plaintiff on March 28, 2016. According to the log, Plaintiff then sent his grievance to the grievance officer on April 1, 2016. The grievance officer denied the grievance and sent it to the Warden on June 7, 2016. The Warden agreed with the grievance officer's determination, and Plaintiff's grievance was sent back to Plaintiff on June 8, 2016. Mr. Martens made clear that he was never personally involved with Plaintiff's January 19, 2016 grievance.

Plaintiff also testified at the May 20, 2019 *Pavey* hearing. He stated that there were two January 19, 2016 grievances. Plaintiff submitted the first grievance to Counselor Shive on January 19, 2016. He marked the grievance as "emergency," but he never received a response.

Plaintiff resubmitted the January 19, 2016 grievance on March 25, 2016 to Counselor Law. Counselor Law marked "Duplicate to original" on the resubmitted grievance. Plaintiff received a response from Counselor Law sometime in late April 2016. Thereafter, Plaintiff

3

submitted the grievance to the grievance officer by placing it in the grievance box. Plaintiff was shown a copy of the January 19, 2016 grievance, completed by the grievance officer and the Warden. The Warden's signature on the grievance was dated June 8, 2016. Plaintiff stated that he did receive this response from the Warden but did not receive it on June 8, 2016. Because of the slow mail system at the prison, he did not receive the Warden's response until July 8, 2016. After receiving the Warden's response, Plaintiff testified that he signed the bottom section titled "Offender's Appeal To The Director" and mailed it to the ARB. He never received a response. Sometime thereafter, he wrote to the ARB inquiring about the January 19, 2016 grievance but again, he never received a response. Plaintiff kept no copies of this correspondence. Plaintiff filed his complaint in this case on May 26, 2016. Dkt. 1.

## LEGAL STANDARDS

### A. The Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") requires a prisoner to properly exhaust his administrative remedies before filing an action concerning prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Pavey*, 544 F.3d at 742 (providing that the district court can conduct a "hearing on exhaustion and [permit] whatever discovery relating to exhaustion he deems appropriate."). A defendant bears the burden of proving a failure to exhaust defense. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). "Courts analyze a prisoner's exhaustion under the preponderance of the evidence standard." *Lloyd v. Dart*, No. 14 C 69, 2016 WL 232422, at *2 (N.D. Ill. Jan. 20, 2016).

The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). In determining whether a plaintiff properly exhausted his administrative remedies, however, the Seventh Circuit focuses on "whether the plaintiff did all he could to avail himself of the administrative process." *Wilder v. Sutton*, 310 F. App'x 10, 13 (7th Cir. 2009).

### B. Exhaustion Requirements Under Illinois Law

State law determines the administrative procedures that a state prisoner must exhaust. *Pyles*, 829 F.3d at 864. Under Illinois law, for non-emergency grievances, an inmate is first required to attempt to informally resolve his grievance with his counselor. ILL. ADMIN. CODE tit. 20, § 504.810(a) (2016). If the counselor does not resolve the issue, an inmate must file a written grievance within sixty days after the discovery of the incident. ILL. ADMIN. CODE tit. 20, § 504.810(a)–(b). The grievance officer shall consider the grievance and report his or her findings and recommendations to the Chief Administrative Officer ("CAO"). ILL. ADMIN. CODE tit. 20, § 504.830(d). Then, the CAO shall make a decision and send a response to the inmate within two months after receipt of the grievance, where reasonably feasible. ILL. ADMIN. CODE tit. 20, § 504.830(d). After receiving a response from the CAO, an inmate may appeal to the ARB within thirty days after the date of the decision. ILL. ADMIN. CODE tit. 20, § 504.850(a). The Director of the ARB shall "make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." ILL. ADMIN. CODE tit. 20, § 504.850(f).

The grievance procedure also allows an inmate to file an emergency grievance. To do so, the inmate must forward the grievance directly to the CAO who may determine that there is a "substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. ILL. ADMIN. CODE tit. 20, § 504.840.[1]

## ANALYSIS

Considering the newly submitted grievance tracking log and the testimony at the May 20, 2019 *Pavey* hearing, the undersigned finds that Defendants have proven by a preponderance of the evidence that Plaintiff failed to exhaust his administrative remedies as it relates to his January 19, 2016 grievance concerning Defendant Dominguez's treatment of his COPD.

Plaintiff claims that when he submitted his emergency grievance to Counselor Shive on January 19, 2016, it should have been responded to by the Warden on an emergency basis. Because no one responded, Plaintiff argues, he was not able to complete the grievance process. It is true that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response. *Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000). The problem with Plaintiff's argument, however, is that Plaintiff did not submit his emergency grievance to the proper authorities. According to the Illinois Department of Corrections regulations, an emergency grievance must be submitted directly to the CAO who will decide if the grievance should be handled on an emergency basis. ILL. ADMIN. CODE tit. 20, § 504.840 (2016). Here, Plaintiff admitted that he hand-delivered this grievance to his grievance counselor, not to the CAO. To exhaust remedies, a prisoner must file complaints and appeals in the place and at the time the prison administrative rules require. *Pozo,* 286 F.3d at 1025. A

---

[1] These regulations concerning the Illinois grievance procedure were amended in 2017. However, because the relevant time period here was 2016, the older regulations are cited.

prisoner cannot fail to follow the rules and then argue that the prisons failure to respond to an improperly filed grievance somehow excuses his conduct. *See Miller v. Baldwin*, No. 3:17-CV-859-NJR-DGW, 2018 WL 6716065, at *3 (S.D. Ill. Dec. 21, 2018) (rejecting prisoner's argument that the prison's failure to respond to his emergency grievance rendered the grievance process unavailable to him where prisoner presented his emergency grievance to his counselor rather than the CAO); *Cook v. Kerr*, No. 15-CV-0070-MJR-SCW, 2016 WL 4679531, at *6 (S.D. Ill. Sept. 7, 2016) (finding that exhaustion related problems were of Plaintiff's own making where he submitted his emergency grievance to his counselor instead of the CAO).

Plaintiff testified that he resubmitted the grievance to Counselor Law on March 25, 2016. Plaintiff claims that he again marked the grievance an emergency. Plaintiff argues that this resubmitted emergency grievance should have been returned to him by the Warden on an emergency basis. However, if Plaintiff's version of events is correct, he again failed to follow the rules with respect to his resubmitted grievance. Because he again failed to follow the prisons regulations, no response to this emergency grievance was required.

In fact, both sides agree that the resubmitted grievance was responded to by Counselor Law. Defendants produced a copy of the January 19, 2016 grievance, marked "Duplicate to original," that is signed by Counselor Law on March 28, 2016. This grievance is not marked an emergency. Moreover, according to the grievance tracking log, where emergency grievances are listed separately, the January 19, 2016 grievance was not an emergency grievance. The resubmitted January 19, 2016 grievance appears to have been treated as a non-emergency grievance and returned to Plaintiff on March 28, 2016. Plaintiff admitted to receiving the grievance from Counselor Law, albeit he stated that he received it in late April 2016. Plaintiff then admitted to sending it to the grievance counselor by placing it in the grievance box. He

7

admitted to receiving it back signed by the Warden on or about July 8, 2016. He claimed he sent it to the ARB thereafter and received no response. However, Defendant submitted a copy of the ARB log, which does not contain any notation that the January 19, 2016 grievance was ever received by the ARB.

Thus, it appears that, with respect to the resubmitted January 19, 2016 grievance, the only significant issue of fact raised is whether exhaustion was complete when, as Plaintiff claims, he sent the grievance to the ARB and did not receive a response, or whether, as Defendant claims, Plaintiff failed to forward the grievance to the ARB and therefore failed to exhaust his remedies.

The undersigned finds that Plaintiff's testimony, that he forwarded the January 19, 2016 grievance to the ARB, lacks credibility. Courts conducting a *Pavey* hearing may credit the testimony of one witness over another. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011). Unlike summary judgment motions, the very purpose of a *Pavey* hearing is to allow a judge to resolve "swearing contests" between litigants on the limited issue of exhaustion of administrative remedies." *Hoskins v. Spiller*, No. 16-CV-1232-MJR-SCW, 2018 WL 4292950, at *2 (S.D. Ill. Sept. 10, 2018) (citing *Pavey*, 544 F.3d at 741).

First, the undersigned is troubled by the stark inconsistencies in Plaintiff's testimony. At the first *Pavey* hearing, Plaintiff testified that, with respect to the January 19, 2016 grievance, he never received a response from the Warden, the grievance counselor, the grievance officer, or the ARB. Plaintiff's counsel clarified the question by asking whether, at any time, from the time he submitted the January 19, 2016 grievance until the time he was discharged from prison in January 2017, he ever received a response from the Warden, the counselor, the grievance officer or the ARB. He answered no.

8

However, after Defendants submitted the grievance tracking log at the second *Pavey* hearing, showing that the responses were sent from the counselor and the Warden, Plaintiff testified that he did receive a response from the counselor and the Warden. Plaintiff's credibility is further undermined by the fact that he had already filed his complaint on May 26, 2016, approximately one and a half months before he alleges he sent his grievance to the ARB. Prisoners must wait and exhaust their administrative remedies before they file their complaint, not file their complaint and then finish exhausting their administrative remedies. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

## **CONCLUSION**

Considering the new evidence, including the grievance tracking log and the testimony provided at the May 20, 2019 *Pavey* hearing, the undersigned finds that Defendants have proven by a preponderance of the evidence that Plaintiff failed to exhaust his administrative remedies as it relates to his January 19, 2016 grievance concerning Defendant Dominguez. Accordingly, it is this Court's Report & Recommendation that Plaintiff be prohibited from proceeding on his COPD claim against Defendant Dominguez. If accepted, the Court's Report & Recommendation will result in the dismissal of Dr. Dominguez from this lawsuit. The case may continue as to Defendant Wexford Health Care Source, Inc. Judge Johnston's Report and Recommendation previously recommended dismissal of all the other individual defendants. That Recommendation was not objected to by Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may object to any or all of the proposed dispositive findings in this Report & Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). Objections

to this Report & Recommendation must be filed on or before June 14, 2019. *See* FED. R. CIV. P. 72(b).

Date: May 31, 2019          By:    *Lisa A. [signature]*
                                             Lisa A. Jensen
                                             United States Magistrate Judge