# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| BERNARD NICHOLL, | ) |
| Plaintiff, | ) |
| v. | ) No. 16 C 50151 |
| WEXFORD HEALTH CARE SOURCES, INC., et al., | ) Judge Thomas M. Durkin |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bernard Nicholl alleges that health care providers or administrators Amber Allen, Tim Chamberlain, Susan Tuell, Lisa Wick, Kristina Mershon, Bessie Dominguez and Wexford Health Care Sources, Inc. ("Defendants") were deliberately indifferent to his medical needs while he was an inmate at Dixon Correctional Center. Defendants asserted the affirmative defense of Nicholl's failure to exhaust his administrative remedies prior to filing suit. Before the Court are the Reports and Recommendations ("R & Rs") of Magistrate Judge Iain D. Johnston and Lisa A. Jensen which taken together recommend the dismissal of each of the individual defendants. R. 103; R. 143. For the following reasons, the Court adopts the R & Rs to the extent they recommend dismissal of the individual defendants, and also dismisses Wexford from the case.

## Background[1]

In his second amended complaint ("SAC"), Plaintiff Bernard Nicholl alleges that while he was an inmate at Dixon Correctional Center: (1) the individual defendants were deliberately indifferent to his chronic pulmonary disease ("COPD") (Count I); (2) the individual defendants were deliberately indifferent to his bone spurs (Count II); and (3) Wexford failed to provide timely and adequate medical treatment for the same conditions (Count III). Defendants asserted the affirmative defense of failure to exhaust administrative remedies. Magistrate Judge Johnston conducted an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) on that issue ("Initial *Pavey* Hearing"). Subsequently, Judge Johnston issued an R & R finding that except for Nicholl's claim that Dominguez was deliberately indifferent in her treatment of Nicholl's COPD, Plaintiff had failed to exhaust his claims against the individual defendants (the "Initial R & R"). R. 103. Judge Johnston determined that a grievance dated January 19, 2016 and concerning Dominguez's conduct "fairly raise[d] the issue of the symptoms" of COPD, and that Nicholl was excused from appealing the response to his grievance because there was no evidence that he had received one. *Id.* at 5-6. But Judge Johnston determined that no other grievance fairly raised any defendant's deliberate indifference to his bone spurs, COPD, or any related symptom. *Id.* 4-5. The Initial R & R did not mention Wexford.

---

[1] Additional background facts and a summary of the exhaustion requirements under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), and Illinois law are set forth in the July 23, 2018 and May 31, 2019 R & Rs that are the subject of this opinion. R. 103; R. 143.

Thereafter, Defendants obtained additional records suggesting that contrary to his testimony at the Initial *Paving* Hearing, not only had Nicholl received a response to his January 2016 grievance, but also he had appealed the response. But the records also suggested that Nicholl failed to complete the grievance process by appealing to the Administrative Review Board as required under Illinois law. R. 143 at 3-4, 8. Accordingly, Defendants timely objected to the Initial R & R on the ground that Nicholl had failed to exhaust his administrative remedies with respect to Dominguez after all. The Honorable Frederick J. Kapala—assigned to the case at the time—returned the matter to Magistrate Judge Johnston to issue a revised R & R. R. 121. Judge Johnston ordered another *Pavey* hearing (the "Second *Pavey* Hearing"). R. 122. Before the hearing, the case was reassigned to Magistrate Judge Jensen and the undersigned judge. R. 131; R. 134. Following the hearing, Judge Jensen issued an R & R dismissing Dominguez for Nicholl's failure to exhaust the COPD claim against her (the "Second R & R"). But Judge Jensen recommended without more that the "[t]he case . . . continue as to Defendant Wexford" (the "Second R & R"). R. 143 at 9. Nicholl did not file an objection, but Defendants objected to the extent the Second R & R recommended that Wexford remain in the case. R. 144.

## Analysis

The Court addresses the recommendations in the R & Rs for the dismissal of the individual defendants before discussing whether the case should proceed against Wexford.

3

## I. Individual Defendants

Neither party offered any objection to the recommendation in the Initial R & R that the Court dismiss individual defendants Allen, Chamberlain, Tuell, Wick and Mershon from the case after being afforded a sufficient opportunity to do so. Accordingly, having reviewed the Initial R & R, which is well-reasoned and supported, the Court adopts it to that extent and hereby dismisses these defendants from the case for Nicholl's failure to exhaust his claims as to each of them.

Nor did any party offer any objection to the recommendation in the Second R & R that the Court dismiss Dominguez, the only remaining individual defendant. The Court reviewed the Second R & R, and finds that it also is well-reasoned and supported, and therefore adopts the recommendation to dismiss Dominguez from the case.

## II. Wexford

What remains is Nicholl's claim against Wexford. In Count III of the SAC, Nicholl alleges that the purportedly unconstitutional medical care he received for bone spurs and COPD was caused by Wexford's failures to: (a) "employ adequate numbers of doctors, nurses, specialists, and other medical providers to ensure the delivery of constitutionally required medical care;" (b) "provide reasonably prompt medical care;" (c) "provide timely emergency treatment;" (d) "properly manage medications;" and (e) "identify and correct incompetent medical treatment." R. 23 ¶ 55.

Defendants argue that dismissal of Wexford is proper because "*no grievance* mentions Wexford or the alleged systemic deficiencies alleged in his [SAC]" and "*no aspect* of [Nicholl's] cause of action was properly exhausted" in any case. *See generally* R. 144 (emphasis in original). Defendants' argument flounders on the first point but succeeds on the second. Indeed, Defendants are correct that Nicholl's grievances do not specifically mention Wexford and do not detail problems with its policies or practices. But as Defendants themselves later acknowledge, Nicholl need not name Wexford in a grievance in order to exhaust his claims against it, and his grievance need only put administrators on notice of the alleged problem with a fair opportunity to respond. *See* R. 149 at 5 (for "*institutional* defendants such as Wexford, the inmate merely needs to provide sufficient descriptive information about the underlying claim" (emphasis in original)); *see also Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought"); *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (failure to name defendants in grievance was a "mere technical defect" and didn't require dismissal).

Thus, the real problem here is not the grievance's lack of specificity, but rather Nicholl's utter failure to exhaust any relevant grievances, as detailed in the R & Rs and discussed *supra*. Without a properly exhausted claim of a constitutional violation, Nicholl's claim against Wexford dies on the vine. *Cf. Orozco v. Wexford Health Sources, Inc.*, 2018 WL 306923, at *4 (S.D. Ill. Jan. 5, 2018 (allowing claim against Wexford to go forward despite failure to identify Wexford or implicate its policies in

5

grievances because plaintiff exhausted his administrative remedies through grievance implicating physician).

Nicholl nevertheless argues that Defendants waived their objection to Wexford's continued presence in the case, having failed to object to the Initial R & R to the extent that it allowed the case to proceed against Wexford, and framed the issue at the Second *Pavey* Hearing as concerning Dominguez only.[2] R. 148. In response, Defendants argue that there was no waiver, because Magistrate Judge Johnston recommended allowing the underlying claim against Dominguez to go forward, "which, if accepted, would mean that there was an underlying exhausted claim against Wexford." R. 149 at 3-4. Defendants' logic is sound, and sufficiently explains the timing of Defendants' objection. But even assuming Defendants had erred by not objecting sooner, and even though Nicholl need not specifically name Wexford in any grievance, that does not change the fact that Nicholl failed to exhaust any of his claims against the individual defendants, and nor did he perfect any institutional claim. Accordingly, having failed to put forth evidence of a medical grievance that fairly raised the issue of deliberate indifference to his COPD or bone spurs, and was fully exhausted, Count III necessarily fails.

---

[2] Nicholl also argues that Count III should proceed because he did not know that Wexford employed any of the individual defendants, and therefore could not name Wexford in his grievances. But this argument is a non-starter. As shown, Nicholl was not required to name Wexford, so long as his grievances "alert[ed] the prison to the nature of the wrong for which redress is sought." *Strong*, 297 F.3d at 650. Accordingly, his failure to do so was not the issue.

6

**Conclusion**

For the foregoing reasons, the Court adopts Magistrate Judge Ian D. Johnston's R & R to the extent that it dismisses individual defendants Amber Allen, Tim Chamberlain, Susan Tuell, Lisa Wick, and Kristina Mershon, R. 103, and adopts Magistrate Judge Lisa Jensen's R & R to the extent that it dismisses individual defendant Bessie Dominguez, R. 143. And because there has been no exhaustion of any of Nicholl's claims, the Court also dismisses Wexford. Civil case terminated.

ENTERED:

*Thomas M Durkin*

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: October 4, 2019